1
2
3
4
5
6

7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9

10   MICHAEL J. FULTON,                    Case No.:  18-cv-00889-AJB-WVG

11                          Plaintiff,     **ORDER:**

12   v.

13   ULTA BEAUTY; and DOES 1-30,           **(1) GRANTING IN PART AND**
     Inclusive,                            **DENYING IN PART DEFENDANT'S**
14                                         **MOTION FOR SUMMARY**
                            Defendants.    **JUDGMENT;**
15

16                                         **(2) GRANTING DEFENDANT'S**
                                           **APPLICATION TO FILE**
17                                         **CONFIDENTIAL DOCUMENTS IN**
                                           **SUPPORT OF DEFENDANT'S**
18                                         **MOTION FOR SUMMARY**
                                           **JUDGMENT UNDER SEAL;**
19

20

21                                         **(3) GRANTING PLAINTIFF'S**
                                           **APPLICATION TO FILE**
22                                         **CONFIDENTIAL DOCUMENTS IN**
                                           **SUPPORT OF PLAINTIFF'S**
23                                         **OPPOSITION TO DEFENDANT'S**
                                           **MOTION FOR SUMMARY**
24                                         **JUDGMENT;**

25

26                                         **(4) GRANTING DEFENDANT'S**
                                           **APPLICATION TO SEAL**
27                                         **CONFIDENTIAL DOCUMENTS IN**
                                           **SUPPORT OF DEFENDANT'S**
28

1
2
3
4
5
6
7

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; AND**

**(5) DENYING  DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

(Doc. Nos. 35, 37, 44, 61, 72)

8   Presently before the Court are Defendant's motion for summary judgment, (Doc.
9   No. 37), Defendant's application to file confidential documents in support of Defendant's
10  motion for summary judgment under seal, (Doc. No. 35), Plaintiff's application to file
11  confidential documents in support of Plaintiff's opposition to Defendant's motion for
12  summary judgment, (Doc. No. 44), Defendant's application to seal confidential documents
13  in support of Defendant's reply in support of motion for summary judgment, (Doc. No.
14  61), and Defendant's motion for judgment on the pleadings, (Doc. No. 72.) As will be
15  explained further below, the Court **GRANTS in part and DENIES in part** Defendant's
16  motion for summary judgment, **GRANTS** Defendant's application to file confidential
17  documents under seal, **GRANTS** Plaintiff's application to file confidential documents
18  under seal, **GRANTS** Defendant's application to seal confidential documents, and
19  **DENIES** Defendant's motion for judgment on the pleadings as moot. The Court will
20  address each motion in turn.

21  **I.      DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
22                          **BACKGROUND**

23  Defendant Ulta Salon, Cosmetics & Fragrance, Inc.  ("Defendant" or "Ulta") is a
24  nationwide retailer of beauty products and services. (Doc. No. 37-1 at 7.) Ulta hired
25  Michael Fulton ("Plaintiff") after he applied for a position as a District Manager in Nevada.
26  (*Id.*) Plaintiff then transferred to a District Manager position in San Diego. (*Id.*) Plaintiff's
27  employment was terminated on September 19, 2017 for poor work performance. (*Id.*)
28  At the outset of Plaintiff's employment, Plaintiff received training regarding the

District Manager position, which included Ulta's procedures and protocols to reduce shrink, Guest Experience Manager ("GEM"), replenishment, loyalty, services, and staffing and scheduling. (*Id.* at 9.) Ulta alleges that one of the key metrics of Plaintiff's performance was the shrink rate in his district, which measured the percent of inventory that was lost, stolen, or otherwise missing. (*Id.*) However, Plaintiff alleges that three most important statistics (from which District Manager bonuses were determined and paid) were (1) actual retail sales compared to budgeted retail sales, (2) actual retail sales of certain specified high-margin items compared to budgeted sales for those items, and (3) actual salon sales compared to budgeted salon sales. (Doc. No. 46 at 9.)

Plaintiff's mid-year review for the period of February 16, 2016 through July 31, 2016 stated that his "[p]erformance fully meets standards and expectations." (Doc. No. 44, Ex. 3.) "[Plaintiff] is progressing as expected toward achieving goals, with results that occasionally exceed expectations in various areas." (*Id.*) Plaintiff's annual review for the period February 1, 2016 through January 31, 2017 stated that same. (Doc. No. 44, Ex. 4.) On April 14, 2017, he was awarded a bonus and stock options. (Doc. No. 46 at 10.)

However, his mid-year review also stated that his sales and shrink were his largest areas of improvement. (Doc. No. 37-1 at 10.) Plaintiff agreed, writing in his review that his "biggest opportunity continues to be shrink and impact on this metric." (Fulton Depo., Ex. 6.) Plaintiff's end of year review rated Plaintiff as only "sometimes meets expectations" in three of the four goals: shrink, services, and GEM. (*Id.*) Plaintiff finished the 2016 fiscal year in the bottom 30% of district managers, ranking 56 in overall performance as compared to all 80 district managers in Ulta nationwide. (Shaw Decl., Ex. 18.)

In February 2017, Plaintiff was transferred to San Diego. In April 2017, all of the 12 Ulta districts were assigned to a new regional vice president, Alyssa Shaw. (Doc. No. 46 at 10.) On May 23, 2017, Plaintiff alleges that Shaw told him that she thought it would be fine if Ulta had all female management employees in her region. (*Id.* at 11.) By June 2017, the shrink rates for stores in Plaintiff's district had increased nearly twofold, and the shrink rate in the Temecula store went from -2.44 in January 2017 to -4.62 in June 2017. (Shaw

Decl., Ex. 4.)

On July 19, 2017, Plaintiff's San Marcos' store received an inventory result of 3.15%, which was over the stores -2% shrink goal, and a nearly 60% increase over its previous inventory results at the end of 2016. (Shaw Decl., Ex. 6.) On July 26, 2017, Plaintiff's Hemet store received a 33.75% audit score, meaning the Hemet store satisfied only 33.75% of the evaluated expectations. (Shaw Decl., Ex. 1.) On August 4, 2017, Shaw gave Plaintiff a written warning regarding his poor job performance. (Shaw Decl., Exs. 1, 6, 8, 3.) The warning explained that a further decline in operational behaviors, such as shrink, in his district would result in further actions up to and including termination. (*Id.* at Ex. 6.)

However, Plaintiff alleges that as of August 2, 2017, Plaintiff's district was number one in California in actual retail sales compared to budgeted retail sales and actual prestige retail sales compared to budgeted prestige sales. (Doc. No. 46 at 11.) Plaintiff's district was number three in California in actual salon sales to budgeted salon sales. (*Id.*) In May 2017, Shaw presented Plaintiff with two corporate awards for his excellent performance. (*Id.*) Also in May 2017, Shaw asked Plaintiff to be the California region's "culture champion," a position awarded to high-performing district managers. (*Id.*) On August 30, 2017, one of the stores that Plaintiff supervises earned an Ulta "Official Seal of Awesomeness" award. (*Id.*) However, on August 18, 2017, Shaw issued a written warning discussion because Plaintiff's stores had the highest shrink rate in the country. (Shaw Decl., Ex. 1.) Plaintiff assured Shaw that the stores could be fixed in the next 5 days. (*Id.*)

On September 19, 2017, Ulta terminated Plaintiff for poor performance. (*Id.*) Defendant alleges that at the time of Plaintiff's termination he was the worst performing district manager in the entire company nationwide. (*Id.*, Ex. 13.) Plaintiff alleges that Shaw made the decision to terminate Plaintiff alone and stated that he was not performing well. (Doc. No. 44, Ex. 9.)

On April 4, 2018, Plaintiff filed his complaint in the Superior Court of San Diego. (Doc. No. 1.) On May 8, 2018, Defendant removed the civil action to this Court. (*Id.*) On

March 29, 2019, Plaintiff was granted leave to amend his complaint. (Doc. No. 25.) Plaintiff filed his amended complaint on April 8, 2019. (Doc. No. 26.) On April 22, 2019, Defendant filed an answer. (Doc. No. 27.) Thereafter, Defendant filed the instant motion for summary judgment on September 23, 2019. (Doc. No. 37.) On March 15, 2020, Defendant then filed the instant motion for judgment on the pleadings. (Doc. No. 72.) This Order follows.

## **LEGAL STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary judgment motion, a court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DISCUSSION**

The Court will address each basis of Defendant's motion for summary judgment in the following sections.[1]

A.   Disparate Treatment Claims

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination. (Doc. No. 37-1 at 17.) To establish a *prima facie* case of discrimination, courts analyze a discrimination claim under the *McDonnell Douglas* burden-shifting framework. *Young v. United Parcel Service, Inc.*, 135 S.Ct. 1338, 1345 (2015). Under the *McDonnell Douglas* framework, "a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). In order to establish a *prima facie* case, plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Id.* "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1123–24. If the employer meets this burden of production, then plaintiff must show that the articulated reason is pretextual. *Id.* at 1124.

First, Plaintiff argues that summary judgment should be denied on the basis that intent and motive are "not determinable on paper." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 423, 286 (2009). However, the *Nazir* court found, "[w]e take no position on this criticism but do observe that many employment cases present issues of intent, and motive,

---

[1] Plaintiff requests judicial notice of the following exhibits: (1) Ulta's 2019 Form 10-k, filed with the United States Securities and Exchange Commission; (2) Ulta's 2016 Form 10-k, filed with the United States Securities and Exchange Commission; and (3) Ulta's 2015 Form 10-k, filed with the United States Securities and Exchange Commission. (Doc. No. 46-6.) Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). These documents are filings with the United States Securities and Exchange Commission and are subject to judicial notice. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006). Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice.

and hostile working environment, issues not determinable on paper." *Id.* at 331. Accordingly, the *Nazir* court did not hold that summary judgment is precluded simply on the basis that issues of intent and motive are involved. Accordingly, Plaintiff's argument on this point is unpersuasive.

It is not undisputed that Plaintiff is a member of a protected class. Next, Defendant argues that Plaintiff's claims fail because he cannot establish that he was competently performing his job in a satisfactory manner, and that there are no circumstances suggesting that Plaintiff's termination was based on discriminatory motive. (Doc. No. 37-1 at 17.) Here, Plaintiff ranked in the bottom thirtieth percentile in overall performance nationwide for the fiscal year of 2016. (Shaw Decl., Ex. 18.) Further, Plaintiff was given a performance review regarding this deficient performance. (*Id.* at Ex. 1, Ex. 6.) Plaintiff's performance continued to decline in 2017. (*Id.* at Ex. 1.) Plaintiff's stores failed to meet expectations for inventory loss. (*Id.*) On August 4, 2017, Plaintiff received a warning regarding his poor performance. (Senesi Decl., Ex. 6, Ex. 1.) Plaintiff even admitted that there were "major opportunities" that need to be fixed in his district. (*Id.* at Ex. 6.) Plaintiff admits that he did not fix the issues to Ulta's satisfaction. (*Id.* at Ex. 1, Ex. 6, Ex. 4.) When Plaintiff was terminated on September 19, 2017, he was the worst performing district manager in the entire company. He had the highest rate of inventory loss in the company and was ranked last out of all the district managers nationwide for overall performance for four out of the prior five months. (*Id.* at Ex. 1, Ex. 2, Ex. 4, Ex. 6.)

Plaintiff argues that his performance was excellent. Plaintiff asserts the following evidence to rebut Defendant's argument that Plaintiff's performance was poor: that Ulta's shrink metrics do not track internal versus external shrink, one of the stores in Plaintiff's district had suffered a large loss of inventory due to a break-in and burglary, Plaintiff's district had four new stores, Ulta's shrink contentions are simply false, the older stores in his district had very high historical shrink rates before he took over that district, and one of his stores shortly before his termination earned an Ulta Beauty "Official Seal of Awesomeness" award for reducing shrink. (Doc. No. 46 at 24–25.) However, these facts

are all solely based on Plaintiff's declaration to his opposition of this summary judgment.

Plaintiff argues that discriminatory motive exists as Defendant openly states that it employs 92 percent females. (Doc. No. 46 at 18, Ex. 10.) Furthermore, Plaintiff argues that statements by his supervisor Alyssa Shaw, prove discriminatory motive. Shaw allegedly told Plaintiff that she thought an all-female management team was fine, and she also asked him what it would take for him to resign. (*Id.* at 19, Fulton Dec. ¶ 13.) Here, Shaw was the one to ultimately make the decision to terminate Plaintiff. The Ninth Circuit has "repeatedly held that a single discriminatory comment by plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005). Accordingly, Plaintiff has established that there are material facts in dispute on motive.

Furthermore, Plaintiff has offered evidence that establishes a dispute of material fact for determining whether Plaintiff's reason for termination was pretextual. Plaintiff alleges that he was given only a few work days to make any necessary improvements prior to his termination. (Doc. No. 46 at 27.) Further, Plaintiff alleges that he was told that shrink was not among the top metrics Ulta Beauty instructed Plaintiff to monitor. While Plaintiff was likely not performing excellent, his reviews did show he was meeting expectations in certain categories. Defendant argues that he was provided adequate time to correct his issues and that he was given warnings. However, these are material factual disputes that must be decided by the trier of fact. Accordingly, the Court **DENIES** summary judgment on Plaintiff's disparate treatment claims.

B.    Disparate Impact Claims

Plaintiff's disparate impact claim fails because a disparate impact case must be supported by statistical evidence. The Ninth Circuit has "recognized the necessity of statistical evidence in disparate impact cases." *Budnick v. Town of Carefree*, 518 F.3d 1109, 1118 (9th Cir. 2008) (citing *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003)). Furthermore, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case

of disparate impact." *Texas Dept. of Housing and Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507, 2523 (2015). Here, in a concurrently filed Order, the Court has determined that Plaintiff's expert will be excluded for being unreliable. Accordingly, Plaintiff is unable to establish any evidence of causation, and therefore, cannot establish a *prima facie* case of disparate impact. Thus, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's disparate impact claims.

C.   <u>Failure to Prevent Discrimination in Violation of FEHA and Wrongful Termination</u>

Each of Plaintiff's two remaining claims are derivative of his discrimination claims. Because Plaintiff's disparate treatment claim will survive this summary judgment motion, the argument that Defendant should be rewarded summary judgment on the basis that the disparate treatment claims would be dismissed are moot.

Defendant further argues that it took steps to prevent discrimination. Under the FEHA, an employer is required to take "reasonable steps" to prevent discrimination. Cal. Gov't Code § 1290(k). Reasonable steps an employer may take include: (1) "the establishment and promulgation of antidiscrimination policies"; (2) "the implementation of effective procedures to handle complaints and grievances regarding discrimination"; and (3) "a prompt investigation of the discrimination claim." *California Fair Empl. & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024–25 (2004). Here, Defendant received a pre-trial settlement offer. Plaintiff alleges that Defendant never investigated the claim and has not provided evidence to the same. Plaintiff was provided with Ulta's antidiscrimination policies and procedures that state to report discrimination and it will investigate complaints of discrimination. However, the fact that Plaintiff was provided with these policies does not mean that they were not violated. Accordingly, the Court **DENIES** summary judgment on Plaintiff's claim for failure to prevent discrimination in violation of FEHA.

Plaintiff's wrongful termination claim is based on his allegation of disparate treatment. Since the Court has found issues of material fact in regard to his disparate treatment claims, the Court **DENIES** summary judgment on Plaintiff's wrongful

termination claim.

D.   Objections Filed by Plaintiff

Plaintiff filed an objection to the evidence submitted by Defendant in support of its motion for summary judgment. (Doc. No. 47.) However, pursuant to the Court's Civil Case Procedures Section II.A., "[o]bjections relating to the motion should be set forth in the parties opposition or reply. No separate statement of objections will be allowed." Accordingly, Plaintiff's objections were not considered by this Court and are hereby ordered to be **STRICKEN** from the Court's docket.

## II.   DEFENDANT'S APPLICATION TO FILE CONFIDENTIAL DOCUMENTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER SEAL

Defendant requests that the Court seal the following documents: (1) Exhibit 1 to the Declaration of Danielle Lee filed in support of Defendant's Motion for Summary Judgment; (2) Exhibits 2-18 to the Declaration of Alyssa Shaw filed in support of Defendant's Motion for Summary Judgment; (3) documents attached as Exhibit 6 and bates numbered Ulta_Fulton00412, 421-422, and 451-455 of the Declaration of Blair Senesi filed in support of Defendant's Motion for Summary Judgment; (4) documents attached as depositions exhibits to Exhibit 1 of the Declaration of Blair Senesi filed in support of Defendant's Motion for Summary Judgment; (5) documents attached as deposition exhibits to Exhibit 1 of the Declaration of Blair Senesi filed in support of Defendant's Motion for Summary Judgment. (Doc. No. 35 at 2–3.)

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate

compelling justifications for sealing that outweigh the public policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178–79. "In turn, the court must 'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (citation omitted).

Defendant asserts that compelling reasons exist for filing these documents under seal because they contain detailed financial information pertaining to Defendant's business, including the dollar amounts of the profits and losses of Ulta stores. Defendant also contends that public disclosure of this information would likely provide competitors insight into Defendant's business operations. *See Nixon*, 435 U.S. at 589 ("[C]ourts have refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing.") (citations omitted); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) ("Documents containing trade secrets or other confidential business information may be protected from disclosure."); *Felix v. Davis Moreno Const., Inc.*, No. CV F 07-0533 LJO GSA, 2008 WL 3009867, at *1 (E.D. Cal. Aug. 1, 2008) ("Potential injury may result from disclosure of confidential and proprietary business information, in that competitors could use such information 'to duplicate [plaintiffs'] products, compete for [their] customers, or interfere with [their] business plan and thereby gain a competitive advantage in the marketplace.'")

The Court agrees with Defendant and finds that despite the generally recognized right to inspect records and documents in this country, Defendant has overcome this strong presumption of access by providing compelling reasons to seal. *See Nixon*, 435 U.S. at 597 & n.7; *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (holding that a "compelling reasons standard applies to most [motions to seal] judicial records.") (internal quotation marks omitted).

Accordingly, balancing the need for the public's access to information and Defendant's interest in keeping this information private weighs strongly in favor of sealing. Thus, the Court **GRANTS** Defendant's motion to seal. (Doc. No. 35.) The Seal Clerk is **ORDERED** to file these documents **UNDER SEAL**.

1
2
3

## III.   PLAINTIFF'S APPLICATION TO FILE CONFIDENTIAL DOCUMENTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

4
5
6
7
8
9
10
11
12
13
14

Plaintiff requests that the Court seal the following documents: (1) Exhibit 5: e-mail dated August 27, 2017 from Michael Fulton to Alyssa Shaw and others at Ulta Beauty; (2) Exhibit 8: Ulta Beauty Official Seal of Awesomeness awarded August 30, 2017 to Michael Fulton and others; (3) Exhibit 9: excerpts from the Deposition of Alyssa Shaw dated September 19, 2018; (4) Exhibit 12: e-mail dated July 10, 2017, from Alyssa Shaw confirming $23,000 of stolen merchandise (at cost) from Ulta Beauty's Hemet store; and (5) Exhibit 13: shrink report for San Diego North showing total shrink as of May 2017 2.99 percent. (Doc. No. 44 at 2.) However, Plaintiff states that filing these documents under seal is unwarranted but provides no support for this contention. (*Id.*) Plaintiff simply recites Defendant's arguments that compelling reasons do exist to file these documents under seal. (*See generally id.*)

15
16
17
18
19
20

For the same reasons set forth above, the Court finds that despite the generally recognized right to inspect records and documents in this country, Plaintiff has overcome this strong presumption of access by providing compelling reasons to seal. *See Nixon*, 435 U.S. at 597 & n.7; *see also Pintos*, 605 F.3d at 677–78 (holding that a "compelling reasons standard applies to most [motions to seal] judicial records.") (internal quotation marks omitted).

21
22
23
24

Accordingly, balancing the need for the public's access to information and Defendant's interest in keeping this information private weighs strongly in favor of sealing. Thus, the Court **GRANTS** Plaintiff's motion to seal. (Doc. No. 44.) The Seal Clerk is **ORDERED** to file these documents **UNDER SEAL**.

25
26
27
28

/ / /
/ / /
/ / /
/ / /

18-cv-00889-AJB-WVG

## IV.   DEFENDANT'S APPLICATION TO SEAL CONFIDENTIAL DOCUMENTS IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant requests that the Court seal the following documents: (1) Exhibit A to the Supplemental Declaration of Alyssa Shaw filed in support of Defendant's Reply in Support of Defendant's Motion for Summary Judgment; (2) Exhibit B to the Supplemental Declaration of Alyssa Shaw filed in support of Defendant's Reply in Support of Defendant's Motion for Summary Judgment; (3) Exhibit C to the Supplemental Declaration of Alyssa Shaw filed in support of Defendant's Reply in Support of Defendant's Motion for Summary Judgment; and (4) the redacted portions of the Supplemental Declaration of Alyssa Shaw filed in support of Defendant's Reply in Support of Defendant's Motion for Summary Judgment. (Doc. No. 61 at 2–3.)

Defendant asserts that compelling reasons exist to file these documents under seal since these documents contain detailed performance and financial information pertaining to Defendant's business, including the dollar amounts of the profits and losses of Ulta stores in San Diego, and in California, and nationally. (Doc. No. 61 at 4.) Plaintiff asserts that Defendant has not met its burden because it does nothing more than speculate that its business interests might be harmed if the documents are not filed under seal. (Doc. No. 66 at 2.) Further, Plaintiff contends that the documents are several years old and could not harm Defendant's business. (*Id.* at 3.) The documents do contain Defendant's retail sales goals, the methods by which Defendant monitors retail sales, stores' financial and operational successes, customer satisfaction information, and information regarding the performance of specific Ulta stores.

Based on the foregoing, the Court finds that despite the generally recognized right to inspect records and documents in this country, Plaintiff has overcome this strong presumption of access by providing compelling reasons to seal. *See Nixon*, 435 U.S. at 597 & n.7; *see also Pintos*, 605 F.3d at 677–78 (holding that a "compelling reasons standard applies to most [motions to seal] judicial records.") (internal quotation marks omitted).

Accordingly, balancing the need for the public's access to information and Defendant's interest in keeping this information private weighs strongly in favor of sealing. Thus, the Court **GRANTS** Defendant's motion to seal. (Doc. No. 61.) The Seal Clerk is **ORDERED** to file these documents **UNDER SEAL**.

## V.   DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant moves for judgment on the pleadings to dismiss Plaintiff's fourth and sixth causes of action for disparate impact under the California Fair Employment and Housing Act ("FEHA") (California Government Code § 12940, et seq.) and Title VII of Federal Civil Rights Act of 1964 (Title VII, 42 U.S.C. § 2000e) on the basis that Plaintiff failed to exhaust his administrative remedies with the DFEH and the EEOC.

As explained above, the Court is granting Defendant's motion for summary judgment on the fourth and sixth causes of action for disparate impact. Thus, the Court **DENIES** Defendant's motion for judgment on the pleadings as moot.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendant's motion for summary judgment, **GRANTS** Defendant's application to file confidential documents under seal, **GRANTS** Plaintiff's application to file confidential documents under seal, **GRANTS** Defendant's application to seal confidential documents, and **DENIES** Defendant's motion for judgment on the pleadings as moot. The Seal Clerk is hereby **ORDERED** to file the requested documents **UNDER SEAL**. Furthermore, the Court **ORDERS** that Plaintiff's objections to evidence submitted by Defendant in support of its motion for summary judgment, (Doc. No. 47), be **STRICKEN** from the Court's docket.

**IT IS SO ORDERED**.

Dated:  August 27, 2020

Hon. Anthony J. Battaglia
United States District Judge

14

18-cv-00889-AJB-WVG